Lori S. **MOTT,** et al., Plaintiffs,

v.

**DRIVELINE RETAIL MERCHANDISING, INC.,** Defendant.

Civil Action No. 12–5244.

United States District Court, E.D. Pennsylvania.

Signed May 21, 2014.

---

**7.** I note further that it appears that Synthes was a Pennsylvania citizen at the time the agreement was signed.

Ralph A. Powell, Ralph A. Powell Esq. PC, Newtown, PA, Richard P. Myers, Paul, Reich & Myers, P.C., Philadelphia, PA, for Plaintiffs.

Clayton D. Ketter, Shannon K. Emmons, Thomas G. Wolfe, Phillips Murrah PC, Oklahoma City, OK, Michael J. Dolan, German Gallagher & Murtagh, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

ANITA B. BRODY, District Judge.

Plaintiffs Lori S. Mott, Cynthia Cotten, Susan Gibbs, Susan Moore, and Judy Ratcliff, on behalf of themselves and all others similarly situated, bring suit against Defendant Driveline Retail Merchandising Inc. ("Driveline") alleging that Driveline failed to pay Plaintiffs for required work in violation of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 & 207(a).[1] Pursuant to the FLSA's collective action provision at 29 U.S.C. § 216(b), Plaintiffs move for an order (1) granting conditional certification of a class comprised of all persons who are or were employed by Driveline as merchandisers of

---

**1.** I exercise subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

any kind during the three years preceding the filing of this lawsuit; (2) compelling Driveline to provide Plaintiffs' attorneys with the names and last known contact information for all potential class members; (3) authorizing Plaintiffs' attorneys to send court-supervised notice to all potential class members; and (4) providing for a 120–day period from the date notices are sent for potential class members to join this action by filing consents to sue with the Court. For the reasons discussed below, I will grant Plaintiffs' motion.

# I. BACKGROUND

Driveline provides in-store marketing and retail services to consumer products companies and national retailers. The five named Plaintiffs are former Driveline employees who worked as hourly-paid "Merchandisers," "Master Merchandisers," or "Resetters" ("Merchandisers") across approximately 14 states. As Merchandisers, Plaintiffs performed services related to the display of products and promotional materials in retail stores. The Plaintiffs' stated wages ranged from $8 to $11 per hour.

According to the Complaint, Plaintiffs began their workday at home by logging on to Driveline's intranet. Plaintiffs responded to email messages, downloaded and printed work orders, reviewed instructions for each merchandising job, and mapped routes to store locations. Plaintiffs were also required to print work authorization letters and work completion forms to be signed by the manager of each store in which they worked. In addition, Plaintiffs began each day by loading into their personal vehicles displays and other marketing materials sent to them by Driveline that they then transported to their assigned retail locations. After completing these administrative tasks at home, Plaintiffs drove to their first retail store of the day.

After completing their last assigned store call of the day, Plaintiffs were required to again log on to Driveline's intranet. Plaintiffs uploaded signed work orders associated with in-store work performed that day; completed questionnaires associated with each work order; uploaded digital photographs taken during the day associated with each work order; and completed and submitted inventory reports.

Plaintiffs allege that Driveline violated the wage and overtime provisions of the FLSA by not paying them for hours they were required to work "off the clock" on Driveline's behalf. In particular, Plaintiffs allege that they were not paid for two categories of time worked—(1) the drive time between home and their first assigned retail location and (2) the time spent on administrative work at home in the mornings and evenings as well as the drive time between store locations during the work day.

Driveline denies these allegations and asserts that its policy is to compensate fully all employees for all time worked. With respect to the claim for uncompensated drive time at the beginning of the day, Driveline argues that its policy of not paying for commute time is legal under federal law. With respect to the claim for uncompensated administrative time and drive time between store locations during the day, Driveline asserts that Merchandisers are paid an allotted time for each merchandising job, and those allotted times are calculated to include administrative time and drive time between stores. If a Merchandiser needs additional time to complete a task, Driveline instructs Merchandisers to request written pre-approval from their District Managers. Driveline argues that regardless of pre-approval, Merchandisers can submit their time

worked to their District Managers and be paid for the additional time.

## II. LEGAL STANDARD

Under the collective action provision of the FLSA, an employee alleging an FLSA violation can bring a suit on behalf of "himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). To be included in a collective action, plaintiffs must be "similarly situated" and give written consent. *Id.*

"Courts in [this] Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.,* 729 F.3d 239, 243 (3d Cir.2013). At the first step, the named plaintiff must make a "modest factual showing" that the employees identified in the complaint are "similarly situated." *Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527, 536 & n. 4 (3d Cir.2012). The court conducts a preliminary inquiry into whether the plaintiff's proposed class members were collectively "the victims of a single decision, policy, or plan. . . ." *Ruehl v. Viacom, Inc.,* 500 F.3d 375, 388 (3rd Cir.2007) (citing *Sperling v. Hoffmann–LaRoche, Inc.,* 118 F.R.D. 392, 407 (D.N.J.1988)). The plaintiff must produce some evidence "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 193 (3rd Cir.2011), *rev'd on other grounds, Genesis Healthcare Corp. v. Symczyk,* —— U.S. ——, 133 S.Ct. 1523, 1526, 185 L.Ed.2d 636 (2013). The plaintiff has "a very lenient burden to bear at this initial stage of certification." *Lugo v. Farmer's Pride Inc.,* No. 07–0749, 2008 WL 638237, at *3 (E.D.Pa. Mar. 7, 2008); *Smith v. Sovereign Bancorp, Inc.,* No. 03–2420, 2003 WL 22701017, at *3 (E.D.Pa. Nov. 13, 2003) (stressing that "modest factual showing" is an "extremely lenient standard"). "The Court does not evaluate the merits of the claim at this stage. . . ." *Lugo,* 2008 WL 638237, at *3. "If the plaintiff meets this lenient standard, the court grants only conditional certification for the purpose of notice and discovery." *Id.*

At the second stage, with the benefit of discovery, the court "makes a conclusive determination that every plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk,* 656 F.3d at 193. The plaintiff bears a heavier burden of proof at this second stage and must prove, by a preponderance of the evidence, that the proposed collective plaintiffs are similarly situated. *Zavala,* 691 F.3d at 536. Courts are to take an ad hoc approach, "consider[ing] all the relevant factors and mak[ing] a factual determination on a case-by-case basis." *Id.* The relevant factors include "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations. . . ." *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir.2001). If the conditional group of plaintiffs are not in fact similarly situated to the named plaintiffs, the group is then decertified, the opt-in plaintiffs are dismissed without prejudice, and any remaining plaintiffs are permitted to move onto the trial stage of litigation. *Lugo,* 2008 WL 638237, at *3.

## III. DISCUSSION

Plaintiffs seek to certify a class comprised of all persons who are or were employed by Driveline as merchandisers of any kind during the three years preceding the filing of this lawsuit. During the three-year time period, Driveline employed

approximately 27,095 Merchandisers. In addition to the five named Plaintiffs, approximately 40 opt-in plaintiffs from across the country have already joined the litigation by filing consents with the Court.

Driveline's opposition to the motion for conditional certification can be organized into two arguments. First, Driveline argues that Plaintiffs have failed to identify a common Driveline corporate policy or practice that violates the FLSA. Second, Driveline argues that Plaintiffs have failed to show that they are similarly situated to the proposed class of Merchandisers nationwide.

## A. Evidence of Uniform Company Policy

### 1. Drive Time between Home and First Retail Location

■ Plaintiffs assert that Driveline enforces a company-wide policy of not paying Merchandisers for the time they spend driving between their home and their first store call of the day. Under Driveline's January 2013 Terms of Work Acceptance Policy, Driveline will not pay drive time, or reimburse mileage, for the normal commute from a Merchandiser's home to the first store on a given day unless the Merchandiser's home is more than 30 miles from the first store. Pls.' Br. Ex. F, Jan. 2013 "Terms of Work Acceptance." Plaintiffs argue that Driveline's policy violates the "continuous workday" rule under which any travel time that occurs after the beginning of an employee's first principal activity and before the end of an employee's last principal activity on any workday must be included in hours worked. *See* 29 C.F.R. § 790.6(a). Plaintiffs allege that the administrative tasks performed at home each morning constitute a principal activity, and thus their subsequent drive time between home and their first store call should be compensable.

Driveline does not dispute that it is company policy not to compensate for time spent commuting from home to the first job of the day. Defs.' Br. at 19. Instead, Driveline argues that neither its formal nor informal policies require merchandisers to log on to their computers at home in the morning, and administrative tasks can be performed any time prior to visiting a store location from any computer with internet access. Thus, according to Driveline, the "continuous workday rule" is not applicable, and Driveline's policy of not paying for commute time is legal.

While Driveline's arguments may have merit, legality is not decided at this stage of the action. *Lugo*, 2008 WL 638237, at *3. "The thrust of the Court's inquiry at this juncture—i.e., at the conditional certification stage—'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" *Karlo v. Pittsburgh Glass Works, LLC,* 880 F.Supp.2d 629, 643 (W.D.Pa.2012) (citation omitted). Plaintiffs need only make a modest factual showing of that the members of the proposed class were collectively victims of a uniform Driveline policy, plan, or scheme. Plaintiffs have met this burden with evidence of Driveline's nationwide policy against compensation for morning drive time.

### 2. Administrative Time Before and After Work and Drive Time Between Retail Locations

Second, Plaintiffs assert that Driveline enforces a company-wide policy of not paying Merchandisers for the time they spend completing necessary administrative tasks at the beginning and the end of the day and driving between retail locations during the day. As described by both Plaintiffs and Driveline, Driveline pays its Merchan-

disers an allotted amount of time on each job. *See* Pls.' Br. Ex. F, Jan. 2013 "Terms of Work Acceptance" ("I agree to complete the work within the time allowed for the work."); Defs.' Br. at 4, 7. In some instances, the Driveline customer specifies the amount of time for which it will pay for work on a job. Defs.' Br. Ex. 1, Bennett Decl. ¶ 18. In other situations, Driveline conducts time studies to establish a time limit for performing the in-store work and related tasks. Defs.' Br. Ex. 1, Bennett Decl. ¶ 19; Ex. 3, Bennett Dep. 18:1–9 (explaining that the time studies are conducted by Michelle Sher, Driveline's Chief Client Services Officer). The amount of time allocated for each job is supposed to include any administrative time at the beginning or the end of the day and any drive time from store to store. *See* Pls.' Br. Ex. F, Jan. 2013 "Terms of Work Acceptance" ("I understand and agree that the time allowed for the work will include administrative time (e.g., preparation for routes, completion of work orders, submission of digital photographs, etc.) as well as store time ("in-store time")"); Defs.' Br. Ex. 1, Bennett Decl. ¶ 39. Driveline's payroll system—the V3 system in place since December 2010—allows for only the allotted time to be submitted for payment. Defs.' Br. Ex. 1, Bennett Decl. ¶ 26. The "Driveline Conditions of Work Policy" states: "Effective September 1, 2011, Driveline will no longer accept or process any payroll time over the payroll time allotted on work order." Pls.' Br. Ex. G. Plaintiffs allege that they had to use all of the allotted time just to complete the in-store portion of their assigned tasks. Plaintiffs allege that as a result of Driveline's payroll policy that prohibits the submission of hours worked in addition to the allotted time, they were not paid for actual time worked on administrative tasks and drive time between stores.

In response, Driveline argues that its policy is to compensate fully all employees for all time they actually work, and it instructs Merchandisers to seek written, pre-approval for any necessary hours beyond the allotted time. *See* Pls.' Br. Ex. G; Ex. F, Jan. 2013 "Terms of Work Acceptance" ("I further understand and agree that if additional time is needed to complete the work, such additional time must be pre-approved by my Driveline manager in writing."). Driveline emphasizes that regardless of pre-approval, Merchandisers can submit their time worked to their District Managers and be paid for the additional time. Driveline argues that Plaintiffs cannot show a company-wide policy of not paying for actual time worked and that any failure to compensate Merchandisers for additional time worked is the result of idiosyncratic understandings of its policies held by District Managers or Merchandisers. *See* Defs.' Br. Ex. 14, Thurston Dep. at 23, 26 (Merchandiser asked her manager for compensation for additional time, but being after told no, she never asked again for additional time); Ex. 18, King Dep. at 16, 17 (Merchandiser's District Manager always approved the time she needed to get additional work done); Ex. 18, N. Wyatt Dep. at 12 (Merchandiser believed based on email message that there was no additional time above the allotted time).

Again, Driveline's response is an insufficient basis on which to deny conditional class certification. *See Chabrier v. Wilmington Fin., Inc.*, No. 06–4176, 2006 WL 3742774, *4 (E.D.Pa. Dec. 13, 2006) (refusing to deny conditional certification based on evidence of Defendant's official policy against "off the clock" work). Plaintiffs have presented overwhelming deposition testimony that both the named Plaintiffs and the proposed class members were victims of a uniform Driveline payroll and compensation system under which Mer-

chandisers working excess time on administrative tasks and driving were unable to enter that time into Driveline's payroll system and never paid for it. *See* Pls.' Br. Ex. H, Mott Dep. 49:14–23; Ex. I, Cotten Dep. 37:18–25, 38:1; Ex. N, Austin–Cash Dep. 113:18–25, 123:19–24; Ex. P, Barlow Dep. 56:19–25, 57:1–10; Ex. Q, Borders Dep. 24:23–25, 25:1–19; Ex. R, Brodsky Dep. 34:14–25, 35:1–18; Ex. V, Herford Dep. 37:4–8; Ex. X, King Dep. 19:25, 20:1–7; Ex. Z, Lamberson Dep. 27:19–25, 28:1; Ex. EE, Perino Dep. 43:1–25; Ex. FF, Ringrose Dep. 28:4–8; Ex. HH, Smith Dep. 31:4–13. By Driveline's own admission, Merchandisers are "paid using the same system, and they are all subject to the same policy which requires them to perform tasks within the allotted time." Defs.' Br. at 25. Driveline's corporate headquarters sets the time allotments for most jobs. Defs.' Br. Ex. 3, Bennett Dep. 18:1–9. The "Driveline Conditions of Work Policy" applicable to all merchandising jobs states that Driveline will not process any payroll time over the time allotted on the work order because it will not accept payroll hours that it cannot bill back to its clients. Pls.' Br. Ex. G. Any dissimilarities in the way that Driveline's payroll and compensation policies were implemented can be examined at the second step certification, after discovery is complete and when the impact or scope of the policies are more fully known. *See Pereira v. Foot Locker,* 261 F.R.D. 60, 66 (E.D.Pa.2009) (conditionally certifying a class despite affidavits provided by Footlocker in which putative class members directly refuted the plaintiff's allegations and detailed the individualized circumstances of their communications with their managers) ("While this evidence may be significant after discovery and during step two of the process, at this stage, it does not compel us to deny preliminary certification."). *Cf. Postiglione v. Crossmark,*

*Inc.,* No. 11–960, 2012 WL 5829793, at \*6 (E.D.Pa. Nov. 15, 2012) (applying a more exacting standard and denying conditional certification where plaintiffs' affirmations regarding non-payment for administrative and drive time alleged different policies regarding compensation).

## B. Evidence that Named Plaintiffs and Proposed Class Are Similarly Situated

Although it has not articulated a specific test to determine whether plaintiffs are similarly situated, the Third Circuit recently cited the Second Circuit's characterization of the court's role at this initial step as "determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist." *Zavala,* 691 F.3d at 536 (citing *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2nd Cir.2010)). Because of the lenient standard at this stage, some district court have found that the plaintiff's evidence sufficient where declarations and deposition testimony detail common job duties and responsibilities across the named plaintiffs and the proposed class. *See In Re: Enter. Rent–A–Car Wage & Hour Employment Practices Litig.,* MDL 2056, 2010 WL 3447783, at \*21 (W.D.Pa. Aug. 13, 2010); *Bouaphakeo v. Tyson Foods, Inc.,* 564 F.Supp.2d 870, 896–97 (N.D.Iowa 2008).

Plaintiffs have more than met their burden that they are similarly situated to other proposed class members. By Driveline's own admission, Plaintiffs and the proposed class are all Merchandisers with similar job descriptions subject to the same policies. Defs.' Br. at 25. In addition to the numerous depositions cited above in which the named Plaintiffs and proposed opt-in plaintiffs describe similar work responsibilities, Plaintiffs provide at least seven affirmations in which both a named Plaintiff and proposed opt-in plaintiffs describe working as hourly-paid Mer-

chandisers responsible for in-store merchandising services at retail locations near their homes as well as administrative work on Driveline's intranet before and after that in-store work. *See* Pls.' Br. Ex. L, Ratliff Aff.; Ex. M, Allman–Douglas Aff.; Ex. S, Ginsbach Aff.; Ex. T, Haase Aff.; Ex. LL, Whitaker Aff.; Ex. MM, N. Wyatt Aff.; Ex. NN, T. Wyatt Aff. Additionally, approximately 40 opt-in plaintiffs from across the country have filed consents with the Court indicating significant interest in joining the proposed class. These affirmations and consents are sufficient to show that similarly situated plaintiffs do exist for the purposes of conditional certification.

Driveline's defense that Plaintiff's claims are too individualized to be litigated collective is unavailing at this stage. Driveline argues that Merchandisers had varying duties requiring varying amounts of administrative time and drive time. Driveline points to the testimony of both named Plaintiffs and potential class members that the time required for administrative work before and after in-store work varies by job, each Merchandiser does different jobs on any given day, and each Merchandiser performs those jobs at different speeds. *See* Defs. Br. at 16, 33–34. Driveline's defense is "relevant to [the] determination of a stage two decertification issue after discovery has closed." *Pereira,* 261 F.R.D. at 66 (E.D.Pa.2009) (citation omitted); *see also Gallagher v. Lackawana County,* No. 07–912, 2008 U.S. Dist. LEXIS 43722, at *28 (M.D.Pa. May 30, 2008) ("[E]vidence offered by defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery during the step-two analysis, does not compel denial of conditional certification."); *Chabrier,* 2006 WL 3742774, *4 (E.D.Pa. Dec. 13, 2006) (conditionally certifying a class where the proposed class members shared common supervisors and common questions of fact regarding these supervisors' instructions about recording time and falsifying time records despite allegations that each plaintiffs' time recording practices and paycheck history would have to be evaluated individually).

## IV. CONCLUSION

In summary, because named Plaintiffs have made a modest factual showing that they are similarly situated to the proposed class members with respect to Driveline's payroll and compensation policies, I will grant Plaintiffs' motion for conditional certification of a class comprised of all persons who are or were employed by Driveline as merchandisers of any kind during the three years preceding the filing of this lawsuit. I will also order Driveline to provide Plaintiffs' attorneys with the names and last known contact information for all potential class members and authorize the sending of the proposed class notice, including the 120–day opt-in period, to all potential class members.

### ORDER

**AND NOW,** this 21st day of May, 2014, it is **ORDERED** that Plaintiffs' Motion for Conditional Class Certification [ECF No. 38] is **GRANTED.** It is further **ORDERED** as follows:

1. The conditional class consists of all former and current employees of Defendant Driveline Retail Merchandising, Inc. ("Driveline") who were classified or referred to by Driveline as Merchandiser, Master Merchandiser, or Master Merchandiser/Area Coordinator at any time within three years prior to September 2, 2012; and

2. On or before **June 2, 2014,** Defendant Driveline must deliver to Plaintiffs' counsel an electronic listing in

Excel spreadsheet format, with each item listed as a separate column, which sets forth the full name, mailing address, city, state, zip code, email address, job title, pay rate, hire date, and termination date (if applicable) for each member of the conditional class; and

3. On or before **July 2, 2014**, Plaintiffs must send to each member of the conditional class by regular mail and email the Notice and Consent to Join forms attached to this Order as Exhibit A; and

4. Plaintiffs must establish a website that contains the approved Notice and Consent to join forms; establish a toll free number that members of the conditional class can call to have basic questions about the lawsuit answered from a script approved by the parties; and receive executed Consent to Join forms from members of the conditional class for forwarding to the Court.

5. To be considered timely filed, executed Consent to Join forms from members of the conditional class must be postmarked or successfully sent by facsimile to Plaintiffs' counsel on or before **October 30, 2014.**

## ATTACHMENT A

### *NOTICE OF COLLECTIVE ACTION LAWSUIT*

*Mott et al. v. Driveline Retail Merchandising, Inc. United States District Court for the Eastern District of Pennsylvania*

THIS IS NOT A LAWSUIT AGAINST YOU! *PLEASE READ THIS NOTICE CAREFULLY AS IT CONTAINS INFORMATION THAT MAY AFFECT YOUR LEGAL RIGHTS*

**TO: ALL PERSONS WHO ARE OR WERE EMPLOYED BY DRIVELINE RETAIL MERCHANDISING, INC AS A MERCHANDISER, MASTER MERCHANDISER OR MASTER MERCHANDISER/AREA COORDINATOR AT ANYTIME ON OR AFTER [*DATE* ].**

### *Purpose of This Notice*

The purpose of this notice is to inform you of the existence of a collective action lawsuit in which you may be "similarly situated" to those who filed the lawsuit (the "Named Plaintiffs"), to advise you how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit if you want to do so.

As described more fully below, if you are eligible and wish to participate in this collective action lawsuit, you must complete and submit the "Consent to Join" form attached to this Notice and mail it or FAX it according to the instructions no later than [*DATE* ].

### *Description of the Lawsuit*

On September 12, 2012, ten Named Plaintiffs filed a Complaint in the United States District Court for the Eastern District of Pennsylvania against Driveline Retail Merchandising, Inc. ("Driveline") on behalf of themselves and all others formerly or currently employed by Driveline in the United States as a Merchandiser, Master Merchandiser or Master Merchandiser/Area Coordinator. The Named Plaintiffs allege that Driveline failed to pay them and all other "similarly situated" straight-time and overtime pay to which they were entitled under the Fair Labor Standards Act ("FLSA"). Specifically, the Named Plaintiffs allege:

1. that Driveline failed to pay them for the time they spent working on Driveline's behalf from home at the beginning and end of each workday; and

2. that Driveline failed to pay them for the time they spent driving from home to their first store of the day, and for the time they spent driving from store to store during the workday.

The Named Plaintiffs also allege the Driveline acted willfully to deny them wages to which they were entitled and, therefore, seek liquidated damages, which means double the actual damages. The Named Plaintiffs also seek attorneys' fees and costs.

Driveline denies the Named Plaintiffs' allegations that it failed to correctly compensate employees as required under the FLSA.

### The Current State of This Lawsuit

This lawsuit is in the early stages of litigation. The Court has conditionally certified this case to proceed as a collective action and ordered that this Notice be sent to you.

### Your Right to Participate in This Lawsuit

If you are or were employed by Driveline for any period on or after [*DATE* ] as a Merchandiser, Master Merchandiser, or Master Merchandiser/Area Coordinator and you believe that Driveline failed to pay you for all hours that you worked or for all overtime compensation to which you were entitled, you have the right to join this lawsuit against Driveline.

If you want to participate in this lawsuit, you must take steps to indicate your intent to do so. You must complete, sign and mail *or* FAX a copy of the "Consent to Join" form, which is attached to this Notice, to [*ADDRESS & FAX NUMBER* ]. If mailed, your signed "Consent to Join" form must be postmarked no later than [*DATE* ].

If you send your "Consent to Join" form by FAX, it must be successfully faxed no later than [*DATE* ].

*If your "Consent to Join" form is not postmarked by the cutoff date, or not successfully faxed by the cutoff date, you will not be allowed to participate in this lawsuit.*

### Statute of Limitations

The FLSA contains a limitations period of at least two years and potentially up to three years for the filing of a claim for unpaid overtime wages, after which the claim is forever barred. In the event you decide not to join in this lawsuit, you should consult with your own attorney as to the statute of limitations which would apply to your claim.

### Effect of Joining This Lawsuit

If you file a "Consent to Join" form and the Court permits your claims to proceed to trial as part of the collective action, you will be bound by any judgment regarding the FLSA claims in this lawsuit, whether favorable or unfavorable to the Plaintiffs. While the lawsuit is proceeding, you may be required to provide relevant information, and may be required to give sworn testimony in a deposition or in Court.

If you choose to join this collective action, you will be represented by the law firms currently representing the Plaintiffs. If you join the lawsuit, you will not be required to pay attorneys' fees or expenses in advance. Counsel for the Plaintiffs may be paid either by Driveline, or they may, either in addition to or instead of payment

from Driveline, receive a percentage of any money judgment or settlement in favor of you, or others similarly situated, as agreed by contract and/or ordered by the Court.

As an alternative to joining this lawsuit, you may file your own lawsuit with any counsel of your choosing, or do nothing.

If you return a "Consent to Join" form, you should be aware that important decisions concerning the prosecution of this case, including the FLSA claims, may be made on your behalf.

### No Legal Effect in Not Joining This Lawsuit

If you choose not to join this collective action lawsuit, you will not be affected by any judgment, whether it is favorable or unfavorable to the Plaintiffs and the collective class. If you choose not to file a "Consent to Join" form, you are free to file your own lawsuit. If you choose not to file a "Consent to Join" form, the statute of limitations will continue to run until such time as you file a lawsuit on your own behalf.

### No Retaliation Permitted

FEDERAL LAW PROHIBITS DRIVELINE OR ANY OF ITS AGENTS FROM TAKING ANY ACTION AGAINST YOU BECAUSE YOU ELECT TO JOIN THIS LAWSUIT BY FILLING OUT AND RETURNING THE "CONSENT TO JOIN" FORM, OR OTHERWISE EXERCISING YOU RIGHTS UNDER THE FLSA.

### Plaintiffs' Collective Action Counsel

Richard P. Myers, Esq.
Paul Reich and Myers, P.C.
Suite 500, 1608 Walnut Street
Philadelphia, PA 19103
215–735–9200
*rmyers@prm pclaw.com*

Ralph A. Powell, Esq.
Ralph A. Powell Esquire, P.C.
1900 Knight Circle
Yardley, PA 19067
215–439–7781
*rapowell-law@comcast.net*

### Driveline's Legal Representation

Thomas G. Wolfe, Esq.
Shannon K. Emmons, Esq.
Clayton D. Ketter, Esq.
PHILLIPS MURRAH P.C.
Corporate Tower/Thirteenth Floor
101 North Robinson
Oklahoma City, Oklahoma 73102

Dean F. Murtagh, Esq.
Michael J. Dolan, Esq.
GERMAN, GALLAGHER
& MURTAGH P.C.
The Bellevue
200 S. Broad Street, Suite 500
Philadelphia, Pennsylvania 19102

### Further Information

For **further** information about this lawsuit, including any part of this Notice, please contact Plaintiffs' counsel by phone or email as shown above.

PLEASE DO NOT CONTACT THE COURT OR ANY COURT PERSONNEL FOR INFORMATION.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR DRIVE-LINE'S DEFENSES.

### CONSENT TO JOIN

I WANT TO JOIN the lawsuit entitled *Mott et al. v. Driveline Retail Merchandising, Inc.*, docket no. 2:12–cv–05244 AB, which is pending in the United States District Court for the Eastern District of Pennsylvania, as a Plaintiff.

I authorize the Law Firms of Paul, Reich & Myers. P.C. and Ralph A. Powell Esquire, P.C. to represent me in this case. I understand that if my claim is successful, the fees of Paul, Reich & Myers P.C. and Ralph A. Powell Esquire P.C. will be paid by a percentage of any settlement obtained or money judgment entered in favor of the plaintiffs, and/or by any attorneys' fees which Driveline Retail Merchandising, Inc. may pay pursuant to any settlement or court order. If my claim is not successful, I will not owe any fees to Paul, Reich & Myers or to Ralph A. Powell Esquire, P.C.

I designate the Named Plaintiffs as my representatives who shall, to the fullest extent possible, make decisions on my behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with the Plaintiffs' lawyers regarding fees and costs, any settlement which may be reached with Driveline Retail Merchandising, Inc. on my behalf, and all other matters pertaining to this lawsuit.

Dated: _____

_____

SIGNATURE

_____

NAME (PLEASE PRINT)

_____

ADDRESS

_____

CITY, STATE & ZIP CODE

_____

TELEPHONE NUMBER(S)

_____

EMAIL ADDRESS(ES)